UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

DAVID JACKSON

CRIMINAL ACTION

13-162-JJB-RLB

**<u>RULING ON MOTION TO SUPPRESS</u>**

This matter is before the Court on a Motion to Suppress (doc. 20) brought by Defendant, David Jackson ("Jackson"). Jackson is charged by way of an indictment (doc. 15) with one count of possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1); one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and one count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Jackson moves to suppress items seized by, and statements made to, arresting officers during and subsequent to an arrest. The United States of America (the "Government") has filed an opposition (doc. 23). Evidentiary hearings were held on April 29, 2014 and June 10, 2014. Post-hearing memoranda were filed by the Government and Jackson (docs. 36 & 37, respectively). For the reasons stated herein, the Defendant's Motion to Suppress (doc. 20) is GRANTED.

I.   **Background**

The Court makes the following findings of fact based upon evidence presented at the evidentiary hearings. On November 21, 2012, Jackson approached his employer, a businessman in Gonzales, Louisiana, and asked him for a loan. Jackson explained that he needed the loan to repay Mexican drug dealers from whom he had stolen a large quantity of marijuana. Jackson further explained that these drug dealers had kidnapped his sister to ensure that Jackson would repay his debt. Though Jackson had made a payment on his debt and secured the release of his

1

sister, an outstanding debt remained and the drug dealers were threatening further action if the debt was not paid in full. Jackson's employer refused to loan him the necessary amount of money. Jackson responded that he would have to use criminal means, including committing an armed robbery, to secure the funds.

Upon hearing this threat, Jackson's employer phoned his long-time friend, U.S. Marshall Harrison who was also a former Drug Enforcement Agent ("DEA"), and explained Jackson's circumstances. Marshall Harrison agreed to speak with Jackson and after doing so, advised him to seek assistance from law enforcement instead of taking matters into his own hands. According to Marshall Harrison, Jackson sounded desperate.

Marshall Harrison obtained Jackson's personal identifiers during his conversation with Jackson's employer. He later shared this information, along with what he had learned about Jackson's situation, with Captain Craig Beaman, a detective employed by the Ascension Parish Sheriff's Office. Based upon the personal identifiers shared by Marshall Harrison, Captain Beaman was able to locate Jackson's rap sheet and a photograph.

After his conversation with Marshall Harrison, Captain Beaman and Lieutenant Will Reames, also employed by the Ascension Parish Sheriff's Office, drove to the employer's place of business to wait for Jackson to emerge. Captain Beaman and Lieutenant Reames watched as Jackson walked from the employer's business to his car and started to leave. Once off the premises, the officers followed Jackson to the Motel 6 located in Port Allen, Louisiana. Thereafter, Lieutenant Reames called Task Force Agent Paul Marionneaux seeking assistance. Lieutenant Reames advised Agent Marionneaux of everything that had transpired from Marshall Harrison's conversation with Jackson's employer to their present location outside of the Motel 6.

At approximately 11:35 a.m., Special Agent Mark Lusco, DEA, forwarded Jackson's photograph to Agent Marionneaux and other DEA agents in the field that were conducting surveillance of Jackson's activities. At approximately 12:00 p.m., Captain Beaman obtained Jackson's rap sheet, which revealed that Jackson had arrests for violent crimes such as armed robbery, aggravated battery, and domestic abuse battery. Jackson's record further revealed that he had a prior felony conviction and that there was currently a warrant out for his arrest for traffic or driving related violations.

Law enforcement continued to monitor the motel until they observed Jackson heading towards his vehicle. Aware of Jackson's criminal intent and criminal record, the agents erred on the side of caution and decided to confront Jackson before he could leave the parking lot. As Jackson attempted to leave in his car, agents turned on their lights and siren, "boxed him in," or prevented him from exiting the parking lot, and approached him with their guns drawn. The sight of two agents approaching his vehicle with their guns drawn prompted Jackson to put his hands up. Agent Marionneaux ordered Jackson out of the car and onto the ground, which Jackson did. At this point, Agent Marionneaux re-holstered his gun, placed Jackson's hands behind his back, and initiated a pat-down search. During the pat-down, Agent Marionneaux asked Jackson if he had any weapons, to which he responded that he had a gun in his waistband. Lieutenant Reames retrieved the gun from Jackson's waistband.[1] Once the gun was secured, Agent Marionneaux placed Jackson in handcuffs and advised him of his *Miranda* rights. Jackson responded that he wanted to waive his *Miranda* rights.

Agent Marionneaux observed that Jackson appeared stressed out. He remarked to Jackson that it appeared that he was having a bad day and asked him if he wanted to talk about it.

---

[1] Jackson does not seek to suppress the Jimenez Arms 9 millimeter firearm that was removed from his waistband. Since the seizure of this firearm has not been called into question, the Court will not address its admissibility.

Jackson said that he did and proceeded to tell Agent Marionneaux that he was in need of help. Agent Marionneaux interrupted Jackson to ask if he had any weapons or drugs in his vehicle. Jackson responded that he did not. Agent Marionneaux then asked if Jackson had any weapons or drugs in his motel room, to which Jackson responded that he had a gun and some marijuana in his room. Agent Marionneaux asked Jackson if it was okay if he searched Jackson's room. Jackson replied that the motel key was in his pocket. The agents took the key, searched the room, and found the gun and three bags of marijuana therein.

Agent Marionneaux then contacted agents from the Federal Bureau of Investigations ("FBI") who took custody of Jackson and interviewed him after advising him of his *Miranda* rights.[2]

## II. Discussion

### A. Consent to Search

Consents to search are recognized exceptions to the Fourth Amendment's warrant requirement. *U.S. v. Mendez*, 431 F.3d 420, 429 (5th Cir. 2005). To be valid, consent must be given voluntarily, without duress or coercion. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). When a defendant challenges the voluntariness of a consent to search, the Government bears the burden to prove voluntariness by a preponderance of the evidence. *U.S. v. Arias-Robles*, 477 F.3d 245, 248 (5th Cir. 2007).

For consent to be voluntary, the consent must be "unequivocally, specifically, and intelligently given, uncontaminated by any duress or coercion." *U.S. v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (citations omitted); *see also U.S. v. Elrod*, 318 F.Supp. 524, 525 (E.D. La. 1970). Voluntariness of consent is a finding of fact that must be evaluated under the totality of

---

[2] Jackson's Motion to Suppress does not attack the constitutionality of the interviews conducted by the FBI and therefore, the admissibility of statements made during these interviews will not be addressed.

the circumstances. *Arias-Robles*, 477 F.3d at 248. The Fifth Circuit has outlined the following six factors to aid a court in making its determination: 1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found. *U.S. v. Hernandez*, 279 F.3d 303, 307 (5th Cir. 2002). No single factor is dispositive. *Id.*

The Government argues that in light of the enumerated factors, Jackson's consent to search was given voluntarily. The Government contends that though Jackson was in custody when he consented to the search, law enforcement did not use coercive procedures. The Government further contends that Jackson chose to discuss his situation in detail. Though law enforcement did not advise Jackson of his right to refuse consent, the Government argues that this omission is not enough to invalidate his consent given his age and experience with the criminal justice system.

In support of suppression, Jackson argues that his consent to search was not voluntary. Before explicitly addressing the enumerated factors, Jackson argues that his consent was not unequivocally given. Instead of affirmatively stating that the agents could search his room, Jackson argues that recognizing the futility of resisting law enforcement's authority, he acquiesced to their request. Additionally, Jackson contends that he was in a particularly vulnerable state of mind given his sister's recent kidnapping and release. His vulnerability was compounded by the number of officers present with their weapons displayed. Turning to the enumerated factors, Jackson argues that he was not voluntarily in custody; instead, he was in police custody and restrained by handcuffs. Jackson further argues that the presence of multiple

5

officers who had their guns drawn at one point during the incident presented coercive police procedures. Finally, law enforcement did not inform Jackson of his ability to refuse his consent to search.

After reviewing the facts of the case in light of the applicable case law, the Court finds that Jackson did not voluntarily consent to having his motel room searched. Several of the factors weigh against finding that consent was voluntarily given. Jackson was in custody and restrained by handcuffs when he gave his consent to search his motel room. (Tr. 46:15-48:20). Additionally, there was the presence of coercive police procedures. The hearing testimony revealed that there were at least five officers around Jackson when he gave his consent. (Tr. 15:21-23). Courts have suggested that as few as two officers could be intimidating under certain circumstances. *U.S. v. Davis*, 40 F.3d 1069, 1078 (10th Cir. 1994).

The third factor militates against finding voluntary consent as Jackson did not unequivocally consent to the search of his motel room. When asked if his motel room could be searched by law enforcement, Jackson responded, "Yeah, the key is in my pocket." (Tr. 48:10). This statement does not suggest an unequivocal conveyance of consent, but rather "an expression of futility in resistance to authority [and] acquiescing in the officers' request." *Worley*, 193 F.3d at 386. He did not tell the agents where they would find the gun and drugs or provide any other details that would assist law enforcement with their search. *Id.* at 386. Moreover, Jackson gave his consent while handcuffed and surrounded by five to six police officers. These circumstances allow the unrebutted inference that Jackson believed that refusing consent would be futile and therefore, chose to acquiesce in the agent's request. His belief in the futility of refusal was not refuted as the agents did not inform Jackson of his right to refuse consent, another factor that weighs against finding that his consent was voluntarily given. (Tr. 60:16-61:3). The sixth factor

6

also weighs against finding voluntary consent because Jackson knew that incriminating evidence would be found in his motel room. While Jackson's education, intelligence, and experience with the criminal justice system weigh in favor of the Government's position, this is not enough to overcome the five other factors weighing against the Government's position.

Finally, Jackson was under emotional duress when he gave his consent to search his motel room. His sister was recently kidnapped and held for ransom as a result of his criminal involvement with Mexican drug dealers. While his sister's safety had been secured, the drug dealers posed an ongoing threat to his and his family's safety until the outstanding debt was repaid. Jackson was at his "wit's end". (Tr. 58:16). He appeared to the agents to be extremely nervous, overwhelmed, and depressed. (Tr. 58:13-16; 58:23; 14:14). His emotional vulnerability supports a finding that his consent was not voluntarily given as such vulnerability could have made him particularly sensitive to even the most subtle presence of coercion.

Accordingly, under the totality of the circumstances, the Court finds that Jackson did not voluntarily consent to the search of his motel room and therefore, all incriminating evidence found therein must be suppressed.

### B. Waiver of *Miranda* Rights

A defendant may waive his *Miranda* rights so long as it is done voluntarily, knowingly, and intelligently. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The government bears the "heavy burden" to prove that the defendant voluntarily, knowingly, and intelligently waived his rights. *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). To determine if the government has satisfied this burden, the Court must find that the waiver was "the product of a free and deliberate choice" free from "intimidation, coercion, or deception," and that the waiver was made "with a full awareness of both the nature of the right being abandoned and the

consequences of the decision to abandon it." *Moran*, 475 U.S. at 421.  This finding is made on a case-by-case basis in light of the totality of the circumstances.  *U.S. v. Cardenas*, 410 F.3d 287, 293 (5th Cir. 2005).

The Government argues that Jackson voluntarily waived his *Miranda* rights.  The Government contends that the voluntariness of the waiver is supported by Jackson's age, agreement to speak with law enforcement after being advised of his rights, and his familiarity with the criminal justice system.  The Government also maintains that there was no coercion as evidenced by the fact that after being advised of his *Miranda* rights, Jackson told agents that he wanted to speak with them.  In response, Jackson argues that the waiver of his *Miranda* rights was not voluntary.  Instead, in light of the coercive environment previously discussed and his vulnerable state of mind, his waiver was the product of coercion and intimidation.  Jackson further argues that as a result of the duress he was under due to *inter alia*, his sister's recent kidnapping and release, he was not able to understand the nature and consequences of his waiver.

After review, the Court finds that Jackson's vulnerable emotional state militates against a finding that he voluntarily waived his *Miranda* rights.  First, as the Court has previously observed, the emotional duress from which Jackson was suffering at the time could have made him particularly vulnerable to even the slightest bit of police coercion.  Here, there were multiple officers from various branches of local and federal law enforcement.  Jackson was handcuffed and surrounded by several officers when he waived his *Miranda* rights.  Second, despite Jackson's previous experience with the criminal justice system, his vulnerable emotional state could have compromised his ability to understand the nature and consequences of the rights being abandoned.  As previously mentioned, Jackson was at his wit's end, nervous, and depressed.  He had been described as being desperate.  Furthermore, in this vulnerable emotional

state, Jackson had demonstrated his willingness to speak to any and every one, civilian or law enforcement, who he believed would help him with his situation. Under the totality of the circumstances, the Court cannot find that Jackson's waiver was "the product of a free and deliberate choice" made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Instead, Jackson's waiver was a product of police intimidation, exasperated by his vulnerable emotion state, and made without considering or appreciating the consequences of waving his rights.

Accordingly, the Court finds that Jackson's waiver of his *Miranda* rights was invalid and therefore, the statements made to law enforcement pursuant to this invalid waiver are suppressed.

### III. Conclusion

For the reasons stated herein, the Defendant's Motion to Suppress (doc. 20) is GRANTED. Accordingly, items seized pursuant to Jackson's consent and statements made pursuant to Jackson's waiver of his *Miranda* rights are suppressed.

Signed in Baton Rouge, Louisiana, on July 22, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**